2022 IL App (1st) 191845-U

No. 1-19-1845

Order filed September 23, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 14537 |
| | ) | |
| DARNELL COOPER, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justices Mikva and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's postconviction petition was properly dismissed on the State's motion during second-stage postconviction proceedings where defendant failed to make a substantial showing of a *bona fide* doubt of his fitness when his guilty plea was entered to support his claim that trial counsel was ineffective for failing to order a fitness hearing; nor was trial counsel ineffective for failing to investigate the victim's prior sexual conduct when such evidence was excluded by the Rape Shield Statute. 725 ILCS 5//115-7 (West 2012).

¶ 2    On November 19, 2010, defendant Darnell Cooper entered a negotiated guilty plea to

aggravated criminal sexual assault in exchange for a 35-year prison term and dismissal of other

charges against him. Subsequently, on October 23, 2013, defendant filed a *pro se* postconviction petition that contended, among other things, that he received ineffective assistance of counsel for counsel's failure to have him evaluated at a fitness hearing and failing to adequately investigate due to a lack of funds. Following a dismissal after a hearing on the State's motion at the second stage, defendant has appealed. On appeal, defendant contends that his postconviction petition made a substantial showing that trial counsel was ineffective for failing to request a fitness hearing and failing to investigate due to lack of funding. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      The record reveals that defendant was originally charged in 14-count indictment with the offenses of aggravated criminal assault, aggravated kidnapping, armed robbery, criminal sexual assault, kidnapping, aggravated unlawful restraint, and unlawful restraint. On November 19, 2010, he pled guilty in a negotiated plea to aggravated criminal sexual assault in exchange for a 35-year prison term and dismissal of the other pending charges against him. As a factual basis to support the plea, the State presented the following. The victim, A.W., would testify that on June 11, 2002, she was on 129th and Wood Streets in Harvey, Illinois, walking to a bus stop when defendant walked up behind her, put a knife to her back and forced her to walk to the area of 159th and Oakley. When they arrived there, defendant pushed the victim down, removed her pants and underwear and vaginally assaulted her. Defendant took her pants, cash, and personal papers from her wallet. He then told her not to get dressed until he was gone. The victim subsequently walked to a gas station to call the police. Someone at the gas station drove her to the Harvey police station. The Harvey Police Department recovered a condom at the scene and semen was recovered from the victim's underwear and sent for DNA analysis.

¶ 5    In April 2003, the lab advised the police department that petitioner's DNA was a match. However, no action took place on the cases until 2010 when the Cook County State's Attorney's Office became involved, and the victim subsequently identified defendant from a photo array. The victim would identify defendant in open court and testify that the encounter was not consensual.

¶ 6    Defendant's trial counsel stipulated that if the State called its witnesses to testify, their testimony would be as described. The trial court found that there was a factual basis for the offense of aggravated criminal sexual assault and found defendant guilty. The matter proceeded to sentencing the same day.

¶ 7    In aggravation, the State indicated that in May 1987, defendant received the following sentences: 10 years for aggravated criminal assault, seven years for attempted criminal sexual assault, five years for attempted robbery, two years for aggravated battery to a police officer, two-and-a half years for failure to register, two years' probation for possession of cannabis, and five years for criminal sexual abuse. Defendant was subsequently sentenced to the negotiated 35-year prison term with credit for time served and three years mandatory supervision on release (MSR).

¶ 8    Defendant did not file a postplea motion or notice of appeal.

¶ 9    On October 23, 2013, defendant filed a *pro se* postconviction petition, contending, among other things, that his trial counsel was ineffective for failing to have him evaluated at a fitness hearing prior to entry of his guilty plea and for failing to investigate his defense due to lack of funding. Specifically, defendant alleged that he was diagnosed with schizophrenia, depression, and delusional thoughts and had been on Zoloft, Trazodone, Risperdal, Cogenta, Deiqual, and Valproc at one time or another since 1986 to the present day. He stated that he informed trial counsel about his mental health history and that he was a patient at a community mental health center and that

he was taking psychotropic medications at the time of his plea. However, defendant states that trial counsel never mentioned that he should be examined by a psychotherapist. Defendant asserted that pursuant to section 104-21(a) of the Code of Criminal Procedure (725 ILCS 5/104-21(a) (West 2012)), a defendant who was receiving psychotropic drugs or other medications under medical direction was entitled to a hearing on the issue of fitness while under medication and a lawyer's failure to assert the provisions of that section amounted to ineffective assistance of counsel. Defendant attached several mental health records to his petition, from 2007, 2008, and 2012.

¶ 10     Records from December 1, 2010, stated that defendant was receiving treatment in the clinic in jail and received treatment in the past year. Defendant reported that he used Risperidone, Trazodone, and other medications as well as a diagnoses of schizophrenia and depression. It further noted that he was then currently using those medications. The medical note further stated that defendant suffered from depression, difficulty concentrating, feelings of hopelessness, increased crying, anxiety, difficulty concentrating, rapid heart palpitations, ruminating and that defendant was then having auditory hallucinations.

¶ 11     Defendant's exhibits also included progress notes from September 4, 2007, that indicated that he was compliant with his medications. A progress note from September 9, 2008, also indicated that defendant was compliant with his medications with no side effects. The also indicated that defendant heard voices, but they usually went away when he slept, and that his prescription for Risperdal was increased. A mental health diagnosis from May 10, 2012, showed that defendant was alert, cooperative, and coherent and maintained appropriate eye contact. He was aware of his person, place, time, and situation.

¶ 12 Defendant's petition additionally argued that trial counsel was ineffective for failing to adequately investigate his defense that he had paid sex with the victim. He stated that he tried to explain to trial counsel that the only people out at that time in the morning waiting for a relationship were prostitutes and those looking for prostitutes. He further stated that he told trial counsel that a rapist would not be thinking about safe sex and use a condom, nor would a person leave one at the scene of the crime. However, when defendant "begged" trial counsel to investigate the victim's criminal history for prostitution, counsel told him that he did not have the funds for such an investigation.

¶ 13 The trial court advanced defendant's petition to the second stage and appointed counsel. On April 13, 2018, counsel filed a supplemental petition and attached the original *pro se* petition. In the supplemental petition, counsel argued that trial counsel performed deficiently where, at the time of the plea, he failed to notify the court of defendant's medical history and the prescription drugs he was taking that may have hindered his ability to understand the nature of his plea. Counsel further argued that despite being repeatedly informed of those issues, including the various medications that defendant was taking as well as his delusional thoughts, depression, and schizophrenia, trial counsel never informed the trial court of those matters. The supplemental petition also stated that defendant asserted his "inability to truly understand the nature of his plea, his inability to assist trial counsel in determination to plead guilty and desire to have his day in court." The supplemental petition further asserted that defendant was raising a claim of actual innocence and that where the plea transcript showed no mention by counsel of defendant's mental history and prescribed drugs, trial counsel's ineffectiveness deprived defendant of his due process rights. The petition contended that trial counsel had a duty to present defendant's condition to the

trial court and asserted that trial counsel failed to visit defendant or investigate his case and spent little to no time speaking with defendant. Finally, the supplemental petition stated that defendant had a defense to submit to the trial court but his condition rendered him unable to speak up and assert his rights.

¶ 14    Postconviction counsel attached several more mental health notes to the supplemental petition, including one dated May 21, 2010, which indicated that defendant reported feeling depressed. Defendant was alert, cooperative, coherent, and maintained appropriate eye contact, and was aware of his person, place, time, and situation. His mood was appropriate, he had no apparent perceptual distortions, and his thought process was intact. At the time of the evaluation, defendant had not current suicidal or homicidal ideations; his grooming was appropriate and his insight, judgment and impulse control were fair. Defendant's medications at that time included Risperdal, Zoloft, and Trazadone. Defendant's diagnosis was schizophrenia.

¶ 15    Counsel also attached defendant's mental health evaluation from the Illinois Department of Corrections (IDOC) on November 23, 2010, four days after entry of his guilty plea. The mental health diagnostic and treatment note indicated that defendant was alert and oriented, was appropriately dressed and groomed. It also indicated that he had poor eye contact, normal speech in rate and rhythm, and no thought form disorder was noted. Defendant's affect was flat, his mood was normal, he had no suicidal or homicidal ideations, and had no crying spells. Defendant had auditory hallucinations and sleep disturbances, but not visual hallucinations, no delusions, and no psychomotor retardation. His judgment and insight were fair, as was his concentration. On December 1, 2010, defendant had another mental health evaluation that indicated he was using

medication such as Risperidone, Doxepin, Trazadone, and other medications for his mental health issues.

¶ 16     The State filed a motion to dismiss the petition on June 15, 2018, arguing that defendant's allegations for ineffective assistance were meritless. Postconviction counsel filed a response on May 31, 2019, arguing that trial counsel was ineffective for not requesting a behavioral clinical exam (BCX) before defendant's guilty plea, and further that defendant's medical records from May 15, 2017, at the IDOC, and his records from November 23, 2010, were substantially different, demonstrating a change in defendant's mental health status. The response further stated that the State misstated in its motion that defendant put a knife to the victim's throat when the factual basis during the guilty plea hearing indicated that defendant put a knife to the victim's back. The response included a mental health progress note from May 15, 2017, which indicated that defendant was aware of the time, place, and person, that his affect was unremarkable, that he was appropriately groomed and that his though process was clear and coherent. The response also argued that trial counsel was ineffective for failing to confer with defendant and investigate his defense that he had consensual sex with a prostitute and had counsel gathered the information needed, defendant could have exercised his right to trial and there may have been a reasonable probability that he would have been found not guilty.

¶ 17     The trial court held a hearing on the State's motion to dismiss on August 16, 2019. The trial court stated that while defendant claimed he told trial counsel that he was taking psychotropic medications, he did not state what the specific medications were or whether or not he was taking them at the time of his plea. The trial court noted that the mere allegation of the use of psychotropic drugs did not create a *bona fide* doubt of fitness and stated that there were no factual allegations

in the petition that defendant did not understand the plea or could not assist trial counsel due to any fitness-related issues he may have experienced, nothing about the effects of the medications he was taking or effects he experienced from not taking his medications. The trial court further noted that defendant did not present any specific evidence regarding his demeanor or irrational behavior at the time of the plea that would support a *bona fide* doubt as to his fitness.

¶ 18 Additionally, the trial court found that the medical records did not raise a *bona fide* doubt of fitness, even though it recognized that the closest evaluation to defendant's plea was from November 23, 2010, and noted auditory hallucinations and sleep disturbances. The trial court indicated that defendant's mental disturbance or psychotropic medication requirement alone did not automatically result in a *bona fide* doubt of his fitness. The trial court found that while the record demonstrated that defendant had a history of mental illness and history of psychotropic drug use, the record did not set forth any opinions on the issue of defendant's fitness at the time of his plea or his ability to assist in his defense. The trial court concluded that defendant had not showed that there was a reasonable probability that he would have been found unfit at the time of his plea, finding that these facts, without more, was insufficient to show that counsel was ineffective for failing to request a fitness hearing or that defendant was prejudiced.

¶ 19 Regarding defendant's other ineffective assistance of counsel claim, the trial court indicated that it had two fee petitions from defendant's trial counsel that detailed the time defendant's private counsel spent on the case, namely up to 28.5 hours on defendant's case. Those hours did not include time spent on other court dates when counsel met with defendant during court appearances, as well as hours spent reviewing discovery, DNA evidence, witness meetings, phone calls with CTA personnel, reviews of IDOC records, including defendant's psych records,

history and tests, phone calls with doctors, visiting the scene and taking photos. The trial court concluded that defendant's claim that trial counsel only met with him four or five hours was rebutted by the record and that he failed to show that counsel's representation fell below an objective standard or reasonableness or that he was prejudiced by inadequate consultation. The trial court further found that the Rape Shield Statute (725 ILCS 5/115-7 (West 2012)) would have precluded any evidence of the victim's sexual activity with anyone other than defendant, and rejected defendant's assertion that trial counsel was ineffective for failing to hire an investigator to show that the victim was a prostitute. The trial court granted the State's motion to dismiss and defendant now appeals from the second stage dismissal of his postconviction petition.

¶ 20                                                    ANALYSIS

¶ 21    On appeal, defendant contends that the trial court erred in dismissing his postconviction hearing where he made a substantial showing that his trial counsel was ineffective for failing to request a fitness hearing or to investigate the victim's criminal background for evidence of prostitution.

¶ 22    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a method by which offenders serving their sentence can assert that their convictions were the result of a substantial denial of their rights under the United States or Illinois constitutions or both. *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 17. A postconviction action is not an appeal from the judgment of conviction but is instead a collateral attack on the trial court proceedings. *Id.* Under the Act, a defendant bears the burden of establishing that a substantial deprivation of his constitutional rights occurred. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 33.

¶ 23    In a non-capital case, a postconviction proceeding involves three stages. At the first stage, the trial court must review the petition within 90 days of its filing and dismiss the petition upon finding that it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a) (West 2012). Where, as here, the review does not take place within 90 days, the petition advances to the second stage, where the trial court must docket the petition for further consideration. 725 ILCS 5/122-2.1(b) (West 2012).

¶ 24    At the second stage, counsel is appointed for the defendant if the defendant is indigent, and the State may answer or move to dismiss the petition. 725 ILCS 5/122-4, 5/122-5 (West 2012). By moving to dismiss the petition, the State challenges the sufficiency of the pleadings as a matter of law. *Rivera*, 2016 IL App (1st) 132573, ¶ 19. The circuit court's dismissal of a postconviction petition at the second stage is reviewed *de novo*. *Id.*

¶ 25    At the second stage of postconviction proceedings, the trial court must assume the truth of the allegations contained in the petition and the attached documentation unless positively rebutted by the record. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If defendant fails to make a substantial showing that he suffered a constitutional violation, the petition is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). Where a substantial showing of a constitutional violation has been established, however, the petition advanced to a third-stage evidentiary hearing. *Id.* The substantial showing test is "a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 26    Throughout the second and third stages of proceedings under the Act, the defendant bears the burden of making a substantial showing of a constitutional violation. *Rivera*, 2016 IL App (1st) 132573, ¶ 20.

¶ 27    Here, defendant is appealing the dismissal of his postconviction claims of ineffective assistance of trial counsel on the State's motion. As noted above, defendant pled guilty in a negotiated plea agreement.

¶ 28    In the context of a guilty plea, counsel's conduct is deficient under the familiar *Strickland* test if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently. *People v. Brown*, 2016 IL App (4th) 140760, ¶ 23. To establish prejudice, the defendant has to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* With respect to the evidence needed to establish the reasonable probability for the second prong, our supreme court has stressed that a "conclusory allegation" does not suffice in a guilty plea case. *People v. Brown*, 2017 IL 121681, ¶ 26; *People v. Jones*, 2021 IL App (1st) 182392, ¶ 44. A defendant must convince the court that a decision to reject the offered plea bargain would have been rational under the circumstances. *Jones*, 2021 IL App (1st) 182392, ¶ 44. To make this assessment, the court must compare the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea. *Id.*

¶ 29    Defendant argues on appeal that he made a substantial showing that trial counsel was ineffective for failing to order a fitness hearing prior to the entry of his guilty plea and for failing to investigate his claims, that the victim was a prostitute with whom he had consensual intercourse, due to a lack of funding.

¶ 30 To establish that the failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland*, a defendant must show that facts existed at the time of trial that would have raised a *bona fide* doubt of his ability to understand the nature and purposes of the proceedings against him or to assist in his defense. *People v. Harris*, 206 Ill. 2d 293, 304 (2002) (citing *People v. Easley*, 192 Ill. 2d 307, 319 (2000)). There are no fixed signs demonstrating a need for a fitness inquiry, and each case is fact specific. *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 87. The issue is whether a defendant could understand the proceedings and cooperate with counsel in his defense. *Easley,* 192 Ill. 2d at 323.

¶ 31 Due process bars the prosecution of an unfit defendant. *People v. Rosado*, 2016 IL App (1st) 140826, ¶ 31. A defendant is unfit to stand trial, if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense. *Id.* The trial court must order a fitness hearing if a *bona fide* doubt of the defendant's fitness is raised. *Id.*; 725 ILCS 5/104-11(a) (2012). Relevant factors which a trial court may consider in determining whether a *bona fide* doubt exists include defendant's irrational behavior, defendant's demeanor at trial, prior medical opinions on defendant competence to stand trial, and any representations by defense counsel on the defendant's competence. *Rosado*, 2016 IL App (1st) 140826, ¶ 31.

¶ 32 Additionally, the fact that a defendant suffers from mental disturbances or requires psychiatric treatment does not automatically result in a *bona fide* doubt of the defendant's fitness. *Id.* ¶ 32. See also *People v. Eddmonds*, 143 Ill. 2d 501, 519 (1991). Fitness speaks only to a person's ability to function within the context of a trial; it does not refer to sanity or competence

in other areas. *Easley*, 192 Ill. 2d at 320. A defendant can be fit for trial although his or her mind may be otherwise unsound. *Id.*

¶ 33    Turning to the case at bar, the record does not reveal, and defendant does not provide, any basis that would arguably raise a *bona fide* doubt of his fitness. Defendant's postconviction petition alleged that he was previously diagnosed with schizophrenia, among other things, and that he had taken some psychotropic medications for many years. Attached to defendant's *pro se* postconviction petition were mental health reports from May 2010, September 2007, September 2008, and May 2012. However, none of these present any evidence of what defendant's fitness was at the time of the entry of his guilty plea in November 2010.

¶ 34    Attached to postconviction counsel's supplemental petition were mental health records from May 21, 2010; November 23, 2010, four days after entry of the guilty plea; and December 1, 2010. The November and December 2010 records are the only records submitted that are close in time to entry of defendant's guilty plea. The November 2010 diagnostic and treatment note indicated that defendant was alert and oriented, was appropriately dressed and groomed, had poor eye contact but normal speech and there was no thought form disorder. Defendant's mood was normal, he had no suicidal or homicidal ideations and no crying spells. While defendant experienced auditory hallucinations and sleep disturbances, he had no visual hallucinations, delusions, or psychomotor retardation. His judgment and insight were fair, and his concentration was fair. The second mental health evaluation on December 1, 2010, indicated that defendant was on medication to treat his mental health issues. None of the medical records submitted in support of defendant's postconviction petition indicate in any way that defendant was unfit or incompetent. Nor do any of the medical records indicate that he was incapable of understanding the proceedings

or that he was incapable of assisting with his defense. Indeed, his inability to assist with his defense is negated by his argument to this court that he provided a defense theory of total innocence to trial counsel, which indicates that he was clearly able to assist with his defense.

¶ 35    In short, taking all of the allegations contained in defendant's postconviction petition as true and upon full consideration of the various medical reports submitted in support of that petition, we find that defendant has failed to make a substantial showing of a *bona fide* doubt of his fitness during the plea proceedings. While it certainly does appear that defendant had some mental health challenges and was probably taking psychotropic medications during that time, those things standing alone do not rise to the level of a *bona fide* doubt of his fitness or inability to function within the context of a trial. Thus, trial counsel was not ineffective for not ordering a fitness evaluation for defendant prior to entry of the guilty plea. We therefore conclude that defendant has failed to establish that facts existed at the time his guilty plea was entered that raised a bona fide doubt of his fitness, and find that his postconviction petition was properly dismissed on this basis.

¶ 36    The same result is warranted on defendant's second claim of ineffective assistance of counsel based on counsel's failure to investigate the victim's previous sexual activity. To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and prejudicial. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10. To establish deficient performance, a defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24. Defendant can make no such showing here.

¶ 37    The Illinois rape shield statute bars evidence of the alleged victim's prior sexual activity or reputation, subject to two exceptions: (1) evidence of past sexual activities with the accused,

offered as evidence of consent and (2) where the admission of such evidence is "constitutionally required." 725 ILCS 5/115-7 (West 2012); *People v. Santos*, 211 Ill. 2d 395, 401-02 (2004). The purpose of the rape shield statute "is to prevent the defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than [the] defendant." (Internal quotation marks omitted.) *People v. Johnson*, 2014 IL App (2d) 121004, ¶ 42. However, the rape shield's preclusion of prior sexual conduct is not absolute and should not be mechanically applied to "obscure relevant evidence that bears directly on guilt or innocence." *People v. Hill*, 289 Ill. App. 3d 859, 862 (1997). The statute's "when constitutionally required" exception requires that a defendant be permitted to offer certain evidence that is directly relevant to matters at issue in the case, even if it concerns the victim's prior sexual activity. *Johnson*, 2014 IL App (2d) 121004, ¶ 42. The question is of relevance, and the victim's sexual history is not constitutionally required to be admitted unless it would make a meaningful contribution to the fact-finding process. *People v. Sandifer*, 2016 IL App (1st) 133397, ¶ 23. Our supreme court has recognized that under the second exception, a defendant's constitutional right to confront witnesses, must, in certain circumstances, supersede the statutory exclusion. *Davis*, 337 Ill. App. 3d at 985. A defendant's constitutional right to cross examine a witness is not defeated by the statute where the evidence of a victim's past sexual conduct is relevant and tends to establish bias, motive, or prejudice. *Id.* (citing *People v. Sandoval*, 135 Ill. 2d 159, 174-75 (1990)).

¶ 38    Neither of the circumstances for exception are alleged or apply here. Defendant does not argue that he previously had consensual sex with the victim under the first exception, nor does he make a sixth amendment right concerning cross examination of the victim that would trigger the

second exception. Instead, defendant argues that he told his trial counsel that the only people out at that time of morning were prostitutes and those looking for prostitutes, and sought to have the victim investigated to determine her prior sexual activity with other individuals besides defendant. This is precisely the sort of inquiry prohibited by the rape shield statute- inquiry into a victim's prior sexual activity, even if she were a prostitute, as noted by the trial court in denying defendant's postconviction petition. See *People v. Ivory*, 139 Ill. App. 3d 448, 453 (1985) (the rape shield law mandates the exclusion of evidence of the victim's alleged profession as a prostitute). Moreover, there is no evidence whatsoever that the victim was a prostitute, other than defendant's alleged statement to his trial counsel that only prostitutes would be out at that time of morning. Defendant did not allege that there were previous encounters between he and the victim, nor did he even allege that he and the victim were acquainted. We find that defendant's ineffective assistance challenge fails as his trial counsel's actions of failing to investigate the victim's prior sexual encounters was not objectively unreasonable where such evidence was inadmissible under the rape shield act, and defendant suffered no prejudice. Thus, the trial court properly dismissed defendant's postconviction petition on this basis.

¶ 39    In short, both of defendant's ineffective assistance of counsel claims fail to make a substantial showing of a constitutional violation and were properly dismissed on the State's motion.

¶ 40    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 41    Affirmed.